IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH HUG and ANNETTE HUG,

                Plaintiffs,

v.

NATIONSTAR MORTGAGE LLC, d/b/a
MR. COOPER,

                Defendant.

OPINION AND ORDER

18-cv-144-wmc

---

Plaintiffs Kenneth and Annette Hug assert claims against their former mortgage servicer, defendant Nationstar Mortgage LLC, d/b/a "Mr. Cooper," for alleged violations of Wisconsin Statute § 224.77(1).[1] Before the court is defendant's motion for summary judgment, arguing that plaintiffs failed to demonstrate a causal link between the alleged violation and their damages. (Dkt. #45.) Since a reasonable jury could not conclude that plaintiffs' claimed damages were caused by the alleged violations of § 224.77, as opposed to defendant's foreclosure action, the court will grant defendant's motion and enter judgment in its favor.

---

[1] Plaintiff's complaint also stated a separate cause of action for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq*. After defendant's filed their motion for summary judgment, plaintiffs dropped their RESPA claim. (Pls.' Opp'n (dkt. # 49).)

UNDISPUTED FACTS[2]

In 2000, Kenneth and Annette Hug purchased a home in Wonewoc, Wisconsin, borrowing money to do so. By 2006, Nationstar Mortgage LLC, d/b/a "Mr. Cooper," had taken over service of the Hugs' home mortgage. At some point in 2006 or 2007, the Hugs began struggling to make their monthly mortgage payments, resulting in the filing of multiple foreclosure actions between 2006 and 2013. While these foreclosure actions were generally resolved between the parties without entry of any judgment, usually by a loan modification or forbearance, the last action, Case No. 13 CV 275 (Juneau Cty. Cir. Ct.), resulted in a judgment of foreclosure being awarded to Nationstar in January of 2014.

From January 2014 through August 2014, the Hugs again tried to bring their loan current and to modify their monthly payments to avoid future defaults. Specifically, in May 2014, the Hugs submitted a loan modification application. Between May 12 and July 3, 2014, Nationstar purports to have logged 36 calls to the Hugs to discuss their situation, leaving voicemails on 4 such calls. (Pl.'s PFOFs (dkt. #51) ¶ 6.) However, the parties failed to connect with one another, apparently due to Mrs. Hug's work schedule.[3] Finally, on August 4, 2014, the parties were able to connect.

---

[2] In moving for summary judgment, defendant failed to file proposed findings of facts as required by this court's summary judgment procedures as set forth in the preliminary pretrial conference order and the preliminary pretrial packet. (*See* 7/27/18 Order (dkt. #13).) Moreover, in response to defendant's motion, plaintiffs filed their own proposed findings (dkt. #51), and defendant failed to respond to those. This lapse in performance is inexcusable, and the court could deny defendant's motion solely on that basis. However, because the legal basis for defendant's motion has merit, the court has elected to consider it and sets forth the following facts from the parties' submissions, treating all of plaintiffs' proposed findings as undisputed and material unless otherwise noted.

[3] Mrs. Hug worked the night shift and would sleep most days between 7:30 a.m. and 3:00p.m., which is when Nationstar placed most of its calls.

During that August 4 call, Nationstar advised that "the reinstatement amount was $27,621.95, and that Nationstar would at best waive $649.64 in legal fees, accepting $26,972.31 as reinstatement." (*Id.* ¶ 31.) To reinstate the loan, the Hugs then asked family members for money, took out a $4,800 car title loan, and used $3,000 of their savings. (*Id.* ¶ 47–48.) After making the reinstatement payment, the foreclosure was dismissed.

Unfortunately, after their loan was reinstated, the Hugs defaulted once again, and Nationstar filed another foreclosure action on July 30, 2015, Case No. 15 CV 126 (Juneau Cty. Cir. Ct.). In response, plaintiffs tried to negotiate yet another modification of their loan, this time paying outside agencies a total of approximately $4,000 to help them do so. (*Id.* ¶ 49.) Ultimately, Nationstar offered the Hugs a trial period of lower monthly mortgage payments, beginning in August 2016 and continuing through November 2016. Nationstar then sent the Hugs a formal "modification agreement" for the Hugs to sign and return.

Initial documents regarding the trial period stated that the modification agreement would be sent after the trial period ended, but it was actually sent early on October 26, before the final payment was even made in November. On November 1, 2016, Nationstar also called the Hugs twice to confirm their receipt of the agreement, but the Hugs neither returned the calls nor the signed modification agreement. Nationstar called several more times between November 2016 and January 2017. However, on January 25, 2017, after repeated failures to communicate, Nationstar withdrew its loan modification offer and sought a judgment of foreclosure against the Hugs. Unable to sustain their mortgage

3

payments, Nationstar obtained a judgment and eventually sold the Hugs' house at a sheriff's sale on February 22, 2018.

OPINION

I. **Scope of Claims Under *Rooker-Feldman***

Before turning to defendant Nationstar's pending motion for summary judgment, the court begins by briefly reviewing part of its prior opinion and order denying defendant's motion to dismiss, which framed the scope of plaintiffs' remaining claim in light of jurisdictional limitations. In particular, defendant sought dismissal of plaintiffs' claims on *Rooker-Feldman* grounds, among other arguments. In denying defendant's motion, the court held that plaintiffs could *not* seek in federal court an order to vacate the state judgment of the Juneau County Circuit Court under *Rooker-Feldman*, but could seek compensatory and statutory damages for fees allegedly incurred as a result of defendant's violations of federal and state collection statutes as claimed in their complaint. (2/25/19 Op. & Order (dkt. #18).) Thus, the court allowed this case to proceed, while warning plaintiffs that demonstrating these alleged fees "were incurred *because of defendant's alleged failure to offer a loan modification*," rather than because of defendant's efforts to foreclose "may be extremely difficult." (*Id.* 9–10 (emphasis in original).)

II. **Proof of Causation**

Unsurprisingly, at summary judgment, defendant now argues that plaintiffs have been unable to prove that any damages were incurred because of the alleged violations of

4

Wis. Stat. § 224.77, as opposed to the foreclosure action itself.[4] In response, plaintiffs contend they sustained monetary damages as a direct result of defendant's "improper" actions in violation of Wisconsin Statute § 224.77. Specifically, the plaintiffs claim the following monetary damages: (1) $4,800 in payments on a car title loan taken out in 2014 to pay the loan reinstatement cost; (2) $3,000 in cash savings used to pay the reinstatement cost; (3) $1,200 in storage unit charges; (4) approximately $4,000 to third-party agencies to help with the loan modification application; and (5) $75,000 in emotional distress. In reply, defendant again argues that these costs do not constitute cognizable damages under Wis. Stat. § 224.77, but rather resulted from foreclosure proceedings.

To begin, Wis. Stat. § 224.77(1)(m) prohibits mortgage bankers, loan originators, brokers, or their agents from engaging in conduct that "constitutes improper, fraudulent, or dishonest dealing." Moreover, an "aggrieved party" may bring a civil action for damages for violations of § 224.77. *See* Wis. Stat. § 224.80(2). An "aggrieved party" is "one having an interest which is injuriously affected." *Moore v. Wells Fargo Home Mortg.*, No. 16-CV-656-WMC, 2018 WL 922370, at *10 (W.D. Wis. Feb. 15, 2018), *aff'd sub nom. Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050 (7th Cir. 2018) (quoting *Liebovich v. Minn. Ins. Co.*, 2008 WI 75, ¶ 36, 310 Wis. 2d 751, 751 N.W.2d 764). Such injuries may be monetary in nature, *Diedrich v. Ocwen Loan Servicing*, 839 F.3d 583 (7th Cir. 2016), including an

---

[4] Defendant also argues that plaintiffs' claims under Wis. Stat. § 224.77 are time-barred by Wis. Stat. § 893.93. However, because this argument was raised in defendant's reply brief, the court will not consider it. *See Wonsey v. City of Chi.*, 940 F.3d 394, 398 (7th Cir. 2019) ("[A]rguments raised for the first time in a reply brief are waived.").

5

award for emotional damages, *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676 (7th Cir. 2011).

For example, in *Diedrich*, plaintiffs sued a home loan servicer for alleged violations of RESPA and Wisconsin Statute § 224.77.[5] The plaintiffs alleged a number of injuries, including damage to their credit, as well as being forced to pay higher interest rates and monthly mortgage payments. However, the court found that the Diedrichs failed to produce evidence sufficient to demonstrate a violation of the statute. More specifically, the court held that:

> Even taking all of the Diedrich's facts as true, however, they simply have not alleged any causal connection between the injury they allege, including the claim for emotional damages, and [defendant's alleged violation of Wis. Stat. § 224.77], as opposed to the foreclosure on their loan, the loan modification process, or the litigation in general.

*Diedrich*, 839 F.3d at 592. As the court explained, the determinative fact was not whether the Diedrichs suffered an injury, but whether the injury was sufficiently linked to violations of Wis. Stat. § 224.77, and not the foreclosure action itself.

Similarly, in *Moore*, this court concluded that plaintiff's out-of-pocket costs were not sufficiently linked to alleged violations of RESPA or § 224.77. In that case, plaintiff claimed entitlement to attorney's fees associated with drafting "a qualified request" for information from the mortgage servicer to properly calculate his arrearages for purposes of

---

[5] Most Seventh Circuit precedent regarding Wis. Stat. § 224.77 also includes related RESPA claims, and the prohibitions and relief afforded under each statute are similar. *Cf.* 12 U.S.C. § 2605(e); Wis. Stat. § 224.77(1)(m); *see also Moore*, 908 F.3d at 1061–62 ("§ 224.77 'essentially points back to the alleged RESPA violation' and does not expand the servicer's liability.") (quoting *Diedrich*, 839 F.3d at 587).

6

a bankruptcy filing, both constituted monetary damages. *Moore*, 2018 WL 922370, at \*8–9. However, This court found "*no* causal connection between the alleged injury and the alleged violation, or at least a reasonable jury would have no basis to find on this record," given Moore's longstanding history of defaults, foreclosure actions and modifications of payment agreements that led up to bankruptcy proceedings, most of which preceded the request for information. *Id.* at \*9 (emphasis in original). The Seventh Circuit affirmed, explaining that this causal connection is a critical element when bringing a RESPA claim. *Moore*, 908 F.3d at 1059 (citing *Catalan*, 629 F.3d 676, 694); *see also Jacobson v. Commonwealth Mortg. Grp., LLC*, 2019 WI App 33, ¶ 25, 388 Wis. 2d 143, 930 N.W.2d 273, *review denied*, 2019 WI 98, ¶ 25, 389 Wis. 2d 31, 935 N.W.2d 672 (explaining that summary judgment is appropriate if party fails to show that he or she is an aggrieved person).

In contrast, the Seventh Circuit in *Catalan* reversed a grant of summary judgment by the district court, ruling that a factual issue existed as to whether borrowers had suffered emotional harm as a result of mortgage servicer's actions and inaction. The court relied on medical records provided by the borrowers that indicated one borrower was under significantly increased stress because of alleged RESPA violations, and not because of a prior foreclosure action. 629 F.3d at 696. Plaintiffs "described their emotional turmoil in reasonable detail," explained that they were distressed because the lender was "ignoring [them]," and noted that the lender "inherited an issue that was preexisting, but it seemed like [the lender] jumped on the bandwagon and didn't listen, [and] ignored what was said" by plaintiffs. *Id.* In the end, the Seventh Circuit held that plaintiffs had provided sufficient

7

evidence to reasonably find that they suffered emotional harm as a result of alleged violations of RESPA.

Like *Diedrich* and *Moore*, and unlike *Catalan*, plaintiffs here have submitted insufficient evidence for a reasonable jury to find that their claimed damages were a result of defendant's alleged violations of § 224.77 as opposed to the foreclosure action itself. Specifically, in opposition to defendant's motion, plaintiffs contend that as a result of the alleged violations, plaintiffs were required (1) to pay $4,800 for a car title loan, (2) use $3,000 from their personal savings, (3) pay $1,200 for storage unit costs (presumably to store their personal items after their house was foreclosed on and sold), and (4) pay $4,000 to third-party agencies to help modify their loan.

As to the first and second items, the car title loan and withdrawal from savings were both paid by plaintiffs to reinstate their home loan after the 2014 foreclosure. While plaintiffs argue that these payments were not required because the reinstatement cost was improperly inflated, there is little, if any, basis for this argument. Even accepting plaintiffs' version of the facts -- and it seems questionable in light of exhibits attached to plaintiffs' own proposed findings of facts (Pl.'s PFOFs, Ex. E (dkt. #50-5) 1) -- any amount plaintiffs paid was to *reinstate* their loan as a result of defendant having already secured its right to foreclosure. Thus, the car title loan and withdrawal from savings were plainly a result of the foreclosure itself and fall outside of the permissible scope of this lawsuit, as described in the court's prior opinion and order on defendant's motion to dismiss. At minimum, plaintiffs have failed to put forth sufficient evidence from which a reasonable jury could

conclude these items were incurred by the alleged improper actions, rather than the foreclosure action itself.

Likewise, the storage unit charges were a direct consequence of the foreclosure action. Plaintiffs again try to differentiate the actions taken post-foreclosure from the foreclosure itself, but this is a distinction without a difference. Plainly, the Hugs would not have needed a storage unit if there had been no foreclosure. *See Moore*, 908 F.3d at 1062-63 (rejecting claims for damages arising out of a default judgment and lawful foreclosure).

Moreover, with respect to the $4,000 they paid to third party agencies to help modify their loan, plaintiffs' own statements undermine any link between that payment and the alleged violations of § 224.77. As plaintiffs state in their opposition brief, "Annette Hug testified that she had to hire these companies to help with a modification *because* she's 'a third-shift person' and had difficulty getting in touch with Nationstar." (Pls.' Opp'n (dkt. #49) 23) (emphasis added).) Again, similar to *Moore*, this out-of-pocket expense lacks any causal connection to the alleged violation of the statute. Indeed, plaintiffs concede it was paid because Mrs. Hug had difficulty getting in touch with Nationstar, *not* because Nationstar allegedly violated § 224.77. Plaintiffs further acknowledge that the Hugs paid the agencies "so nothing would get missed," and to "get help from somebody who's been through it before and not just another homeowner." (Pl.'s PFOF (dkt #51) 8.) From the plaintiffs' own admissions, these out-of-pocket expenses to enlist the help of advisers were ancillary costs voluntarily paid to help with the loan modification, not costs paid as a result of alleged violations of § 224.77. As such, a reasonable jury could not find

9

that these payments were required because of any alleged violations of state law; rather, third-party help was necessary because of Ms. Hug's work schedule and her desire for help with the loan modification. At minimum, as in *Diedrich*, plaintiffs have failed to offer sufficient evidence "to demonstrate, not just that [the servicer] was responsible for these injuries, but specifically, that [the servicer's] failures to comply with [Wis. Stat. § 224.77] caused their injury." *Diedrich*, 839 F.3d at 591.

Finally, plaintiffs also seek damages for emotional injuries. For this claimed injury, plaintiffs must "describe[e] their emotional turmoil in reasonable detail," and link it to the alleged violations of the statute. *Catalan*, 629 F.3d at 696. While plaintiffs may have described their emotional turmoil in sufficient detail, they again fail to provide sufficient evidence to link it to the alleged violations of § 224.77. Recognizing this predicament, plaintiffs attempt to distinguish *Diedrich* by arguing that "here, *the foreclosure was caused by the violations*," and that "the foreclosure *would not have happened* if Nationstar had not engaged in the improper conduct." (Pls.' Opp'n (dkt. # 49) 25-26 (emphasis in original).) Specifically, plaintiffs represent that

> Annette suffered from pain and panic attacks during the foreclosure process and when she had to move, continuing into the present, including while they moved . . . . Ken became withdrawn and depressed during the foreclosure process and began fighting more with his wife; the Hugs "contemplated divorce *as a result of the stress from foreclosure*."

(*Id.* at 25 (emphasis added).) This argument, however, is self-defeating: it concedes that the emotional distress was caused by the foreclosure. In other words, plaintiffs are presenting the exact argument that the court concluded was barred by the *Rooker-Feldman* argument. (2/25/19 Op. & Order (dkt. #18) 9 (plaintiffs must "demonstrate that any

10

emotional distress experienced by plaintiffs was because of defendant's alleged failure to offer a loan modification, rather than because of larger, now resolved foreclosure proceedings")); *see also Moore*, 908 F.3d at 1062-63. Specifically, plaintiffs cannot claim injuries based on the foreclosure of their home, which is exactly what they are attempting to do in claiming emotional distress damages here. While the court recognizes that the prospect of losing, as well as the imminent loss of, a home can be highly stressful and cause severe emotional distress, the source of the Hugs' distress here was not alleged violations of the statute, but rather the lawful foreclosure and sale of the house itself.

### III. Claimed Violations of § 224.77

While in the introduction of their summary judgment motion defendant appears to challenge plaintiffs' ability to demonstrate violations of their claims, it never actually developed that argument for purposes of the motion for summary judgment. Still, in their response, plaintiffs devote most of their opposition to explaining why defendant's conduct was "improper" under § 224.77(1). The court would be remiss to note significant doubts as to the merits of plaintiffs' claim of § 224.77 violations. A survey of cases addressing the "improper" standard under Wis. Stat. § 224.77(1)(m) reveals that the alleged actions here -- that defendant failed to call plaintiffs when they requested to be called or otherwise failed to act promptly in evaluating their loan modification request -- do not constitute "improper" behavior in violation of the statute. *See, e.g.*, *SunTrust Mortg., Inc. v. Lane*, 2013 WI App 138, ¶ 8, 351 Wis. 2d 681, 840 N.W.2d 137 (holding that "slow processing of her loan modification request, and its failure to make a decision or to inform her of a decision on loan modification . . . did not rise 'to the level that was contemplated in

Chapter 224,' because 'it needs to be more egregious than that'"); *Nekoosa Port Edwards State Bank v. McCarthy*, 2014 WI App 71, ¶ 18, 354 Wis. 2d 622, 848 N.W.2d 903 (rejecting claimed violation of § 224.77(1)(m) based on the bank's failure to act in good faith and offer a mortgage modification).

While plaintiffs argue that defendant's actions relating to the loan modifications of 2014 and 2016 were "improper" to the extent that they violated Wis. Stat. § 224.77, the undisputed facts reflect a prolonged negotiation process dating back as far as 2006, and plaintiffs repeated struggles to make their monthly mortgage payments since then. Indeed, the facts as laid out by the plaintiffs hardly point toward improper actions by defendant. In each instance of alleged "improper" behavior, the defendant seemed more than willing to cooperate -- Nationstar simply could not contact the Hugs due to Mrs. Hug's work schedule or for whatever other reason.

Regarding the 2014 loan modification in particular, defendant contacted the Hugs a total of *36* times between May and July, leaving messages on four occasions. Further, while plaintiffs argue that the defendant *could* have negotiated for a lower reinstatement amount, plaintiffs fail to point to any caselaw (or otherwise develop an argument) suggesting that defendant was *obligated* to provide a lower reinstatement amount, let alone that was it "improper" for them not to do so, at least absent evidence that the principal loan amount or interest due had been inflated.

Finally, in 2016, despite defendant sending the loan modification agreement even before the final payment was due, defendant had to contact plaintiffs several times and never received *any* response. While the court grants summary judgment based on a lack of

any evidence supporting a reasonable finding that plaintiffs' injuries were caused by the alleged violations of state law, plaintiffs' own extensive argument as to the grounds for claiming a violation of § 224.77(1) reveals that the court could grant summary judgment on plaintiffs' failure to submit evidence supporting a finding of liability as well.

ORDER

IT IS ORDERED that:

1) Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper's motion for summary judgment (dkt. #45) is GRANTED.

2) The clerk's office is directed to enter judgment in defendant's favor and close this case.

Entered this 13th day of April, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge